# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Crim. No. 1:22-CR-0004 |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| KELSEY LAMIA SEYMORE-SMITH | : | Judge Jennifer P. Wilson |

## <u>MEMORANDUM</u>

Defendant Kelsey Lamia Seymore-Smith ("Seymore-Smith") is charged in a one-count indictment with possession of a firearm by a prohibited person in violation of 18 U.S.C. § 922(g)(1). (Doc. 1.) Seymore-Smith moves to dismiss the single-count indictment based on the argument that Section 922(g)(1) violates the Second Amendment to the United States Constitution as applied to her. (Doc. 39.) For the reasons that follow, the court will deny the motion.

### FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Seymore-Smith was charged with a single count of possession of a firearm by a prohibited person in violation of 18 U.S.C. § 922(g)(1) on January 5, 2022. (Doc. 1.) The Government alleges that on March 8, 2021, a Pennsylvania State Police Trooper observed a silver Mazda CX-5 SUV following another car while traveling on the Pennsylvania Turnpike. (Doc. 59, p. 1.)[1] After running the registration of the Mazda and determining that it expired in January 2021, the

---

[1] For ease of reference, the court uses the page numbers from the CM/ECF header.

Trooper conducted a traffic stop on the Mazda. (*Id.*) Seymore-Smith was the driver and only occupant of the car. (*Id.* at 1–2.) The Trooper observed several indicators of criminal activity and asked Seymore-Smith for consent to search the vehicle, which she provided. (*Id.* at 2.) In the front passenger seat, the Trooper found a backpack containing a Ruger LCP .380 caliber handgun with three rounds of ammunition in the magazine. (*Id.*) Seymore-Smith was taken to the Carlisle State Police Barracks, given her *Miranda* rights, and interviewed. (*Id.*) During the interview, Seymore-Smith stated that the gun belonged to her cousin, who was in prison, he had left the gun in the bag, and then left the bag with Seymore-Smith. (*Id.*) She advised that she did not know what was in the backpack, but that she previously handled the firearm and put the bag in the car without knowledge of what was in it. (*Id.*)

Seymore-Smith is alleged to have violated Section 922(g)(1) because she possessed this firearm, which was shipped and transported in interstate and foreign commerce, after she was previously convicted of at least one crime punishable by imprisonment for a term of more than one year. (Doc. 1.) The Government asserts that Seymore-Smith has one conviction that disqualifies her from possession of a firearm pursuant to Section 922(g)(1), namely, a 2018 Pennsylvania conviction for manufacture, delivery, or possession with intent to manufacture or deliver a controlled substance. (Doc. 59, pp. 2.)

On February 10, 2023, Seymore-Smith filed a motion to dismiss the indictment based on the argument that the application of Section 922(g)(1) to her violates the Second Amendment based on *New York State Rifle Association v. Bruen*, 597 U.S. 1 (2022).  (Doc. 39.)  The motion was fully briefed as of April 10, 2023.  (*See* Docs. 39, 40, 44, 46.)  On June 26, 2023, the court ordered supplemental briefing to address the Third Circuit Court of Appeals' decision in *Range v. Attorney General*, 69 F.4th 96 (3d Cir. 2023) ("*Range I*").  (Doc. 51.) The supplemental briefing on *Range I* was completed on September 13, 2023. (Docs. 54, 59, 60.)

Then, on October 11, 2023, this court entered an order staying the resolution of the motion to dismiss pending the Third Circuit Court of Appeals' review of the consolidated appeal in *United States v. Quailes*, No. 23-2533 (3d Cir. 2023).  (Doc. 63.)  Following the Third Circuit's decision in that appeal, the court directed the parties to confer and determine whether *Quailes* and *United States v. Moore*, 111 F. 4th 266 (3d Cir. 2024), applied to the facts of this case, namely, whether Seymore-Smith was serving a term of supervised release, probation, or parole for any state or federal criminal offense at the time when she is alleged to have committed the violations in this case.  (Doc. 84.)  The parties complied and notified the court that Seymore-Smith was not on state or federal probation, parole, or supervision at the time of the offenses alleged in the indictment.  (Doc. 85.)

Thereafter, the court directed the parties to submit supplemental briefs to address the impact of relevant decisions issued while Seymore-Smith's motion to dismiss was stayed.  (Docs. 88, 89, 92, 95, 96.)

This matter is currently listed for trial on November 3, 2025.  (Doc. 98.) Seymore-Smith has been released on conditions since her initial appearance and arraignment on March 1, 2022.  (*See* Doc. 13.)

**STANDARD OF REVIEW**

Federal Rule of Criminal Procedure 12 allows parties to "raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits."  FED. R. CRIM. P. 12(b)(1).  In her pretrial motion to dismiss, Seymore-Smith asserts an as-applied challenge to the constitutionality of Section 922(g)(1).  (*See* Docs. 27, 28, 39, 72.)  In order to resolve an as-applied challenge, the court determines whether a law with some permissible uses "is nonetheless unconstitutional as applied" to the movant's conduct.  *Spence v. Washington*, 418 U.S. 405, 414 (1974).

**DISCUSSION**

**A. The Parties' Arguments Regarding the Constitutionality of Section 922(g)(1) As Applied to Seymore-Smith**

In her original briefing, Seymore-Smith argued, based on application of the two-part test articulated in *Bruen*, 597 U.S. at 1, that Section 922(g)(1) impacts her rights as a person protected by the Second Amendment and the law is inconsistent

4

with the Nation's historical traditions of firearms regulation.  (Doc. 40, pp. 2–6.)

In the second set of briefs regarding the motion to dismiss, Seymore-Smith applied

*Range I* and argued that there is further support that Section 922(g)(1) is

unconstitutional.  (Doc. 54.)  She submitted that she has Second Amendment

Rights, that Section 922(g)(1) regulates Second Amendment conduct, and that the

Government cannot show that Section 922(g)(1) is consistent with the Nation's

historical tradition of firearm regulation.  (*Id.* at 2–8.)

   The Government argued in opposition that *Range I* was wrongly decided[2]

and distinguishable from this case in any event.  (Doc. 59, pp. 4–5.)  The

Government conceded that Seymore-Smith is one of "the people" protected by the

Second Amendment pursuant to *Range I*, but argued that Seymore-Smith's motion

should be denied for two independent reasons.  (*Id.* at 9.)  The Government

asserted first that Seymore-Smith fails to maintain that she possessed the firearm

for a lawful purpose, and second that the prohibition on firearm possession in

Section 922(g)(1) as applied to Seymore-Smith is supported by relevant historical

tradition.  (*Id.* at 9–22.)

---

[2] In its second supplemental brief, the Government does not argue that *Range II* is wrongly decided.  The Government has not filed a petition for writ of certiorari from the decision in *Range II* and the time to file has expired.  Thus, it appears that the Government does not contend that *Range II* was wrongly decided, and the court will not address that argument.

In reply, Seymore-Smith disagreed with the Government's assertion that she is required to state that she possessed the firearm for a lawful purpose because neither the statute nor *Range I* requires such proof.  (Doc. 60, pp. 1–4.)  Seymore-Smith also disagreed with the Government's reliance on a "dangerousness" standard for disarmament, and argued that the Government has not met its burden of establishing that disarmament of persons convicted of non-violent felony offenses has a longstanding historical analogue.  (*Id.* at 4–8.)

In their second supplemental briefs, each party addressed the impact of four relevant decisions issued while Seymore-Smith's motion to dismiss was stayed for the second time.  (Docs. 89, 92, 95, 96.)  Specifically, the parties addressed *United States v. Rahimi*, 602 U.S. 680 (2024), *Range v. Attorney General*, 124 F.4th 218 (3d Cir. 2024) ("*Range II*"), *United States v. Quailes*, 126 F.4th 215 (3d Cir. 2025), and *Pitsilides v. Barr*, 128 F.4th 203 (3d Cir. 2025).  Seymore-Smith further argued that *Range II* reaffirmed *Bruen*'s two-step framework and that it is undisputed that she has met the first step of the *Bruen* test.  (Doc. 89, pp. 5–6.)

The Government essentially conceded that Seymore-Smith is one of "the people" protected by the Second Amendment pursuant to *Range II*, but argued that Seymore-Smith's motion should be denied because the prohibition on firearm and ammunition possession in Section 922(g)(1) as applied to Seymore-Smith is supported by relevant historical tradition.  (Doc. 92, pp. 5–33.)  In making this

argument, the Government conducted a "dangerousness" analysis and asserted that Seymore-Smith's possession of a firearm poses a particular danger because of her prior drug trafficking conviction.  (*Id.* at 27–33.)

In her supplemental reply brief, Seymore-Smith responded to the Government's argument regarding dangerousness, submitting that a finding of "dangerousness" requires fact-finding, which is not permissible at a motion to dismiss stage and that her as-applied challenge to Section 922(g)(1) does not fail simply because her criminal history includes a conviction for a "serious crime." (Doc. 95, pp. 1–7.)  And, for the first time, Seymore-Smith argues that the "dangerousness" requirement creates vagueness in Section 922(g)(1) that rises to the level of a due process violation rendering the statute facially unconstitutional. (*Id.* at 8–9.)

### B. The Text of the Second Amendment and Significant Rulings on the Second Amendment

The text of the Second Amendment states: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed."  U.S. CONST. amend. II.

### 1. Supreme Court Precedent from *Heller* to *Rahimi*

There was a sea change in the Supreme Court's analysis of the Second Amendment from the militia-based rationale articulated in *United States v. Miller*, 307 U.S. 174 (1939), to the pre-existing individual right explained in *District of*

*Columbia v. Heller*, 554 U.S. 570 (2008), and *McDonald v. Chicago*, 561 U.S. 742 (2010).  In those decisions, the Court "recognized that the Second and Fourteenth Amendments protect the right of an ordinary, law-abiding citizen to possess a handgun in the home for self-defense."  *Bruen*, 597 U.S. at 8–9 (citing *Heller*, 554 U.S. at 570; *McDonald*, 561 U.S. at 742).  And then, in 2022, the Court held in *Bruen* "that the Second and Fourteenth Amendments protect an individual's right to carry a handgun for self-defense outside the home."  *Id.*

Importantly, in *Bruen*, the Court established a two-step test to determine if a particular regulation violates the Second Amendment:

> In keeping with *Heller*, we hold that when the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct.  To justify its regulation, . . . the government must demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation.  Only if a firearm regulation is consistent with this Nation's historical tradition may a court conclude that the individual's conduct falls outside the Second Amendment's "unqualified command."

*Id.* at 24 (quoting *Konigsberg v. State Bar of Cal.*, 366 U.S. 36, 50, n.10 (1961)). To measure consistency with historical firearm regulations, the modern regulation must be "relevantly similar" to historical predecessors.  *Id.* at 29.  The Court explained that the burden on the Government is to identify a "well-established and representative historical *analogue*, not a historical *twin*.  So even if a modern-day regulation is not a dead ringer for historical precursors, it still may be analogous enough to pass constitutional muster."  *Id.* at 30.  And then, in *Rahimi*, the Court

clarified that, when conducting *Bruen's* history-and-tradition inquiry, "the

appropriate analysis . . . [is] whether the challenged regulation is consistent with

the principles that underpin our regulatory tradition." 602 U.S. at 692. The Court

rejected the idea that the examination of historical analogues signals "a law trapped

in amber." *Id.* at 691.

### 2.  Third Circuit Precedent Applying *Bruen* and *Rahimi*

The Third Circuit had occasion to apply both *Bruen* and *Rahimi* in the

appeal filed in the *Range* case. This appeal has traveled a long procedural road to

finality. In 2020, Bryan Range filed suit in the Eastern District of Pennsylvania,

seeking a declaration that Section 922(g)(1) violates the Second Amendment as

applied to her. Applying then-controlling Third Circuit precedent, *United States v.*

*Marzzarella*, 614 F.3d 85 (3d Cir. 2010), *Binderup v. Attorney General*, 836 F.3d

336 (3d Cir. 2016) (en banc) (plurality), *Holloway v. Attorney General*, 948 F.3d

164 (3d Cir. 2020), and *Folajtar v. Attorney General*, 980 F.3d 897 (3d Cir. 2020),

the district court granted summary judgment to the Government. *Range v.*

*Lombardo*, 557 F. Supp. 3d 609, 611, 613–14 (E.D. Pa. 2021). Range appealed.

While her appeal was pending, the Supreme Court decided *Bruen*. A Circuit

panel affirmed the district court decision, applying *Bruen* and concluding that the

Government met its burden to show that Section 922(g)(1) reflects the Nation's

historical tradition of firearm regulation. *Range v. Att'y Gen.*, 53 F.4th 262, 266

(3d Cir. 2022) (per curiam).  Range petitioned for rehearing en banc, and the

Circuit granted the petition and vacated the panel opinion.  *Range v. Att'y Gen.*, 56

F.4th 992 (3d Cir. 2022).  The en banc court reversed and remanded for the District

Court to enter judgment in favor of Range, finding that Range remained one of

"the people" protected by the Second Amendment and the Government did not

show that the Nation has a longstanding history and tradition of disarming people

like Range.  *Range v. Att'y Gen.*, 69 F.4th 96, 98 (3d Cir. 2023) (en banc) ("*Range*

*I*").

The Government filed a petition for writ of certiorari.  While that petition

was pending, the Supreme Court decided *Rahimi*.  The Court then vacated *Range I*

and remanded for further consideration.  *Garland v. Range*, 144 S. Ct. 2706

(2024).

In the second en banc opinion following remand, the Third Circuit reached

the same conclusions as in *Range I*.  The Circuit concluded that Bryan Range

remains one of "the people" for purposes of the Second Amendment

notwithstanding his prior conviction.  *Range II*, 124 F.4th at 226–28.  The Circuit

next concluded that Section 922(g)(1) regulates Second Amendment conduct and

"'the Constitution presumptively protects that conduct.'"  *Id.* at 228 (quoting

*Bruen*, 597 U.S. at 17).  The Circuit then examined whether the Government had

shown that applying Section 922(g)(1) to Range would be "'consistent with the

Nation's historical tradition of firearm regulation'" and concluded that it had not

carried its burden.  *Id.* (quoting *Bruen*, 597 U.S. at 24).  The Third Circuit

concluded its analysis as follows:

> Our decision today is a narrow one.  Bryan Range challenged the
> constitutionality of 18 U.S.C. § 922(g)(1) only as applied to him given
> his violation of 62 Pa. Stat. Ann. § 481(a).  Range remains one of "the
> people" protected by the Second Amendment, and his eligibility to
> lawfully purchase a rifle and a shotgun is protected by his right to keep
> and bear arms.  More than two decades after he was convicted of food-
> stamp fraud and completed his sentence, he sought protection from
> prosecution under § 922(g)(1) for any future possession of a firearm.
> The record contains no evidence that Range poses a physical danger to
> others.  Because the Government has not shown that our Republic has
> a longstanding history and tradition of depriving people like Range of
> their firearms, § 922(g)(1) cannot constitutionally strip him of his
> Second Amendment rights.

*Id.* at 232.

Soon after *Range II* was decided, the Third Circuit addressed another civil

case in which a plaintiff convicted of a felony offense brought suit seeking a

declaration that application of Section 922(g)(1) to him would violate the Second

Amendment.  *Pitsilides v. Barr*, 128 F. 4th 203 (3d Cir. 2025).  Upon examination

of *Bruen*, *Rahimi*, and *Range II*, the Court explained the "upshot of these cases."

*Id.* at 210–11.  First, a court's "inquiry into *principles* that underlie our regulatory

tradition does not reduce historical analogizing to an exercise in matching elements

of modern laws to their historical predecessors."  *Id.* at 210 (emphasis supplied).

Second, "whatever other recourse may or may not be available, felons seeking to

challenge the application of § 922(g)(1) at least may bring declaratory judgment actions" and relief may be granted on a record sufficient to enable "individualized fact-finding." *Id.* Finally, "while *Rahimi* and *Range II* did not purport to comprehensively define the metes and bounds of justifiable burdens on the Second Amendment right, they do, at a minimum, show that disarmament is justified as long as a felon continues to 'present a special danger of misus[ing firearms],' in other words, when he would likely 'pose[] a physical danger to others' if armed." *Id.* (quoting *Rahimi*, 602 U.S. at 698; *Range II*, 124 F.4th at 232). The *Pitsilides* decision makes clear that the "'Second Amendment's touchstone is dangerousness.'" *Id.* at 210–11 (quoting *Folajtar*, 980 F.3d at 924 (Bibas, J., dissenting); citing *Kanter v. Barr*, 919 F.3d 437, 451 (7th Cir. 2019) (Barrett, J., dissenting), *United States v. Bullock*, 123 F.4th 183, 185 (5th Cir. 2024) (per curiam), *United States v. Williams*, 113 F.4th 637, 657 (6th Cir. 2024), and *United States v. Jackson*, 110 F.4th 1120, 1128 (8th Cir. 2024)).

Ultimately, the Court remanded to the District Court for additional discovery probative "to the prevailing Second Amendment analysis, including whether Pitsilides poses a special danger of misusing firearms in a way that would endanger others." *Pitsilides*, 128 F.4th at 213. However, the Court instructed that:

> Courts adjudicating as-applied challenges to § 922(g)(1) must consider a convict's entire criminal history and post-conviction conduct indicative of dangerousness, along with his predicate offense and the conduct giving rise to that conviction, to evaluate whether he meets the

threshold for continued disarmament. As *Range II* illustrated, consideration of intervening conduct plays a crucial role in determining whether application of § 922(g)(1) is constitutional under the Second Amendment. *See* 124 F.4th at 232. Indeed, such conduct may be highly probative of whether an individual likely poses an increased risk of "physical danger to others" if armed. *Id.*

*Id.* at 212. That is because an individual may be disarmed "consistent with the historical principle that legislatures may disarm a person who poses a danger to the physical safety of others." *Id.* (citing *Rahimi*, 602 U.S. at 693; *Range II*, 124 F.4th at 232; *Bullock*, 123 F.4th at 185; *Williams*, 113 F.4th at 662; and *Jackson*, 110 F.4th at 1128.) Further, the Court observed that "both history and common sense reflect that this 'dangerousness' includes not only direct involvement in physical violence" but also conduct that is "'dangerous because [it] often lead[s] to violence,'" such as burglary and drug dealing. *Id.* at 213 (quoting *Folajtar*, 980 F.3d at 922 (Bibas, J., dissenting); citing *Williams*, 113 F.4th at 659). This assessment "necessarily requires individualized factual findings." *Id.*

The Third Circuit has issued two non-precedential decisions in criminal cases following the decisions in *Range II* that provide additional guidance relevant to this matter. In *United States v. White*, No. 23-3013, 2025 WL 384112, at *2 (3d Cir. Feb. 4, 2025), *petition for cert. filed*, No. 24-7158 (May 8, 2025), the Court rejected the Second Amendment challenge to Section 922(g)(1) because White's "prior felony convictions for drug distribution, aggravated assault, and carrying a firearm without a license demonstrate that he 'present[s] a special danger of

13

misus[ing firearms],' and would likely pose an increased risk of 'physical danger to others' if armed."  2025 WL 384112, at *2 (quoting *Rahimi*, 602 U.S. at 698; *Range II*, 124 F.4th at 232).  Looking at White's entire criminal history, the Court concluded that his convictions, considered collectively, show that White would pose a danger to others if armed because his prior criminal activities could lead to violent confrontation.  *Id.* (citing *Williams*, 113 F.4th at 659 for the proposition that legislatures may disarm those convicted of crimes like drug dealing because such crimes pose a significant threat of danger, warranting disarmament).

In *United States v. Williams*, No. 23-2773, 2025 WL 1341877, at *2 (3d Cir. May 8, 2025), the Court concluded that the District Court did not commit plain error in rejecting Williams' Second Amendment challenge.  That is because Williams has a lengthy criminal history that distinguished him from Bryan Range, including two convictions for possession of cocaine with intent to distribute, one conviction for possession of marijuana with intent to distribute, and one conviction for child endangerment.  *Id.*  Given Williams' "dramatically different criminal record," the Circuit's narrow holding in *Range II* did not compel the dismissal of the Section 922(g)(1) conviction.  *Id.*

Finally, there are two additional precedential decisions from the Third Circuit that provide additional guidance with respect to the analysis of a Second Amendment challenge to Section 922(g)(1).  In *United States v. Moore*, 111 F.4th

14

266, 273 (3d Cir. 2024), *petition for cert. filed*, No. 24-968 (Mar. 7, 2025), the

Third Circuit held that "[a] convict completing his sentence on [federal] supervised

release does not have a Second Amendment right to possess a firearm." And, in

*United States v. Quailes*, 126 F.4th 215, 224 (3d Cir. 2025), *petition for cert. filed*,

No. 24-7033 (Apr. 18, 2025), the Third Circuit extended the holding in *Moore* to

individuals on state parole or probation. However, this precedent is not controlling

in this case because the defendant was not on any form of supervision at the time

of the alleged offense conduct.

### C. Application of Relevant Precedent to Defendant's Second Amendment Challenge

#### 1. *Bruen* Step One Analysis

The first question is whether the text of the Second Amendment applies to

Defendant and her proposed conduct. *See Bruen*, 597 U.S. at 31–33; *Range II*, 124

F.4th at 225; *Pitsilides*, 128 F.4th at 209. Here, the Government concedes that

Seymore-Smith remains among "the people" despite her felony convictions. (Doc.

59, p. 9.) Rightfully so, based on the controlling precedent in *Range II* concluding

that an individual who has a felony conviction remains among "the people." *See*

*Range II*, 124 F.4th at 228.

The Government, however, protests that the Second Amendment does not

apply to Defendant's proposed conduct because she has not attested in this case

that she possessed a gun for a lawful purpose such as self-defense. (Doc. 59, pp.

10–11.)  Defendant disagrees, asserting that such attestation is not required by either Section 922(g)(1) or the *Range* decision.  (Doc. 60, pp. 1–4.)

In *Range II*, the Court characterized "the easy question" as "whether § 922(g)(1) regulates Second Amendment conduct." 124 F.4th at 228.  The Court then stated: "It does." *Id.*  In relevant part, the statute makes the possession of any firearm or ammunition unlawful for a person convicted of an offense punishable by imprisonment for a term exceeding one year.  18 U.S.C. § 922(1).  The statute criminalizes the possession of any firearm or ammunition for any purpose (lawful or otherwise) by this class of persons.  And it appears that the Circuit determined in *Range II* that this regulation of this specific conduct is clearly covered by the Second Amendment.

The Government's argument that Defendant's purpose for possession is relevant may arise from the Circuit's observation that the relief requested in Range's civil suit to possess firearms to hunt and protect herself fit squarely within the constitutional right as defined by *Heller*.  *See Range II*, 124 F.4th at 228.  But immediately following this observation, the Court then quoted the following portion of the *Heller* decision: "The Second Amendment extends, prima facie, to all instruments that constitute bearable arms, even those that were not in existence at the time of the founding." *Range II*, 124 F.4th at 228 (quoting *Heller*, 554 U.S. at 582).  Reviewing this paragraph in *Range II* in totality, rather than the sole

16

sentence about Bryan Range's expressed purpose in filing his declaratory judgment action, the court understands that the Circuit concluded that Section 922(g)(1) regulates Second Amendment conduct because it criminalizes the possession of any firearm or ammunition by a class of persons, regardless of the purpose for the possession (which would include lawful purposes, such as Bryan Range's).

The court also notes that in the non-precedential *White* decision, where the criminal defendant argued that Section 922(g)(1) is unconstitutional as applied to him, the Circuit did not address the first *Bruen* question at all, and only addressed the second *Bruen* question. 2025 WL 384112 at *2. Since *Bruen* instructs that the second step of conducting a historical tradition analysis is only necessary when the person and his conduct are covered by the Second Amendment, 597 U.S. at 24, this may suggest that the Circuit has determined that the first *Bruen* question did not require further discussion in the context of a Second Amendment challenge to Section 922(g)(1). On the other hand, it may suggest that when a defendant's challenge fails at the second *Bruen* step, as was the case in *White*, it is not necessary to analyze the first *Bruen* step. In any event, the Circuit clearly did not analyze whether the defendant in *White* stated a purpose for his possession of a firearm.

### 2. *Bruen* Step Two Analysis

Having determined that the defendant and her conduct are covered by the Second Amendment and are presumptively protected, the court must next determine "whether the Government can strip [her] of [her] right to keep and bear arms" by analyzing whether application of Section 922(g)(1) to this defendant is "'consistent with the Nation's historical tradition of firearm regulation.'" *Range II*, 124 F.4th at 228 (quoting *Bruen*, 597 U.S. at 24); *see also Pitsilides*, 128 F.4th at 209.

The court's analysis of the *Bruen* step two question is guided by the controlling precedent in *Range II* and *Pitsilides*.[3] As detailed previously, the court will assess this question according to "the prevailing Second Amendment analysis, including whether [the individual at issue] poses a special danger of misusing firearms in a way that would endanger others." *Pitsilides*, 128 F.4th at 213. The court will consider the defendant's "entire criminal history and post-conviction conduct indicative of dangerousness, along with her predicate offense and the conduct giving rise to that conviction, to evaluate whether she meets the threshold

---

[3] Seymore-Smith has questioned whether *Pitsilides* applies to a motion to dismiss a Section 922(g)(1) prosecution given that the case is a declaratory judgment action. (Doc. 95, p. 3.) This court is not aware of any reason why the Circuit's analysis of the *Bruen* step two determination would apply with any less force in the context of a motion to dismiss a charge in a criminal prosecution than in a declaratory judgment action. In each matter, the court is required to determine whether the Government's disarmament of an individual due to a prior conviction is consistent with the Nation's historical tradition of firearm regulation.

for continued disarmament." *Pitsilides*, 128 F. 4th at 212. That is because an

individual may be disarmed "consistent with the historical principle that

legislatures may disarm a person who poses a danger to the physical safety of

others." *Id.*; *see also Range II*, 124 F.4th at 230 (citing *Rahimi* in support of the

proposition that disarming (at least temporarily) physically dangerous people based

on a finding that such person poses a safety threat is consistent with the historical

tradition of disarming people who pose a clear threat of physical violence to

another); *United States v. Bullock*, 123 F.4th 183, 185 (5th Cir. 2024); *United*

*States v. Williams*, 113 F.4th 637, 649–663 (6th Cir. 2024).

      In conducting this analysis, the court is mindful of the narrowness of the

*Range II* holding. The Circuit found only that our Nation's history and tradition do

not support permanent disarmament of Bryan Range who only has a two-decades

old conviction for food-stamp fraud and there is no evidence of ongoing recidivism

or threat of physical danger to others. *See Range II*, 124 F.4th at 232. In assessing

whether the criminal record and available background information about the

defendant in this case lead to the conclusion that the defendant is, in fact,

sufficiently dangerous so that the application of Section 922(g)(1) to her is

consistent with the Second Amendment, the court will view Bryan Range as one

data point on the dangerousness spectrum, specifically, on the far end of non-

dangerousness.

The Government contends that applying Section 922(g)(1) to Seymore-Smith is constitutional because her prior felony for drug trafficking is "serious and indicates that her firearm possession would pose a danger to herself or others." (Doc. 92, p. 29.) The Government submitted the docket sheet for Seymore-Smith conviction, which details that she has a 2018 Pennsylvania felony conviction for manufacture, delivery, or possession with intent to manufacture or deliver a controlled substance. (Doc. 96.) The Government submits that this prior conviction provides a basis to reject Seymore-Smith's constitutional challenge based on the demonstrated dangerousness of drug trafficking crimes in combination with firearms. (Doc. 92, pp. 29–33.)

Seymore-Smith maintains that the Government has not met its burden of showing the Nation's historical tradition of permanently disarming her as no record has been developed on the "dangerousness" inquiry. (Doc. 60, pp. 4–8; Doc. 95, pp. 1–7.)

Having considered both parties' arguments, the court concludes that Seymore-Smith's prior conviction for felony drug trafficking less than three years prior to her alleged possession of a firearm in this case demonstrates that she presents a danger of misusing firearms and would likely pose an increased risk of

physical danger to others if permitted to be armed.[4] *See White*, 2025 WL 384112 at *2 (holding that defendant's prior criminal convictions for possession with intent to distribute controlled substances, aggravated assault, and carrying an unlicensed firearm "shows that he would pose such a danger to others if armed because those activities could lead to violent confrontation"); *Williams*, 113 F.4th at 663 (holding that a person convicted of a crime is dangerous and can be disarmed if he has committed, among others, "a crime that inherently poses a significant threat of danger, including (but not limited to) drug trafficking and burglary"); *Williams*, 2025 WL 1341877 at *2 (holding that prior convictions for possession with intent to distribute cocaine and marijuana and child endangerment constitute a "dramatically different criminal record" than Bryan Range for purposes of Second Amendment analysis); *Mollett*, 2025 WL 564885 at *7 (holding that three prior convictions for drug trafficking less than two years prior to the Section 922(g)(1) offense support the conclusion that defendant presented a special danger of misusing firearms and was subject to disarmament).

---

[4] *See also United States v. Birry*, No. 3:23-cr-288, 2024 WL 3540989, at *8 (M.D. Pa. July 25, 2024) (finding that two prior convictions for possession with intent to distribute methamphetamine showed defendant posed a credible threat to public safety); *United States v. Roach*, No. 2:24-cr-77, 2025 WL 871618, at *2 (E.D. Pa. Mar. 20, 2025) (discussing that "drug dealing" convictions establish a defendant's dangerousness); *United States v. Trusty*, 2025 WL 830124, at *5 (D.N.J. Mar. 17, 2025) (holding that defendant's four "prior drug offenses *were* dangerous because *drug dealing* is inherently dangerous").

Seymore-Smith's argument that a dangerousness requirement creates a vagueness in Section 922(g)(1) that rises to the level of a due process violation making the statute facially unconstitutional also fails. (*See* Doc. 95, pp. 8–9.) First, this argument was raised for the first time in Seymore-Smith's supplemental reply brief and the Government has not had an opportunity to respond. Thus, as a procedural matter, the court will not review an argument raised for the first time in a reply brief. Even so, this is not a colorable argument because Seymore-Smith fails to show how Section 922(g)(1) is unconstitutional as applied to her, which is required to sustain a facial vagueness challenge. *See United States v. Harris*, No. 21-3031, --- F.4th ----, 2025 WL 1922605, at *9 (3d Cir. 2025) ("The Supreme Court has long held that, with few exceptions, a defendant whose conduct is 'clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others.'")

Based on this review of Seymore-Smith's criminal record, it is clear that Seymore-Smith presents a significant risk of dangerousness if permitted to be armed. Thus, based on the above analysis, the court concludes that Section 922(g)(1) is not unconstitutional as applied to Seymore-Smith.

## CONCLUSION

For the foregoing reasons, Seymore-Smith's motion to dismiss the

indictment, Doc. 39, will be denied.  An implementing order will follow.

s/Jennifer P. Wilson
JENNIFER P. WILSON
United States District Judge
Middle District of Pennsylvania

Dated: August 5, 2025